**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| CUMMINS-ALLISON CORP., §<br>     Plaintiff, §<br> §<br>v. §<br> § CIVIL ACTION NO. 2:03-CV-358 (TJW)<br>1. GLORY LTD., §<br>2. GLORY SHOJI CO., LTD., and §<br>3. GLORY (U.S.A.), INC., §<br>     Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment of Invalidity for Public Use as to certain claims of United States Patent No. 5,692,067 ("the '067 patent"). For reasons more fully set out below, the Court DENIES Defendants' Motion for Summary Judgment.

**I.     Introduction**

Defendants Glory Ltd., Glory Shoji Co., Ltd., and Glory (U.S.A.), Inc. (hereinafter "Glory") filed a motion for summary judgment on March 21, 2005 based on alleged public use of the claimed invention of the '067 patent prior to May 19,1991. Specifically, Glory asserts that claims 6-9, 37-40, 44-47, 54-59, 61, 63-66, and 73-75 of the '067 patent are invalid under 35 U.S.C. § 102(b) due to use of Currency Recognition Counters ("CRC") by various banks from January to May of 1991. Plaintiff Cummins-Allison Corp. ("Cummins") asserts that summary judgment is improper because there are disputed issues of material fact relating to (1) when the invention was reduced to practice, and (2) whether Cummins has an "experimental use" defense to a claim of invalidity under 35 U.S.C. § 102(b).[1] Because the Court agrees that there are disputed issues of material fact relating to the date

---

[1] Based on Cummins' Infringement Contentions served on July 18, 2005, claims 6 and 9 are no longer asserted, thereby mooting summary judgment as to those claims. However, Cummins appears to have added claims 10, 11, 23, 24, 35 and 36 to their Infringement

the invention was reduced to practice and whether Cummins has an "experimental use" defense, the Court denies Glory's motion.

## II.     Legal Standard

Summary judgment should be granted if the Court determines "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-254 (1986).  All reasonable factual inferences must be drawn in favor of the nonmovant. *Anderson*, at 254-255.

Public use is a question of law based on underlying factual considerations, and, absent genuine factual disputes underlying the public use inquiry, the issue is ripe for judgment as a matter of law. *See, e.g., Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996). While the ultimate burden of establishing public use remains on the patent challenger, when the challenger has made a clear and convincing case that the invention was in public use, the burden shifts to the patent holder to produce sufficient evidence to show that the use was experimental. *Id*.

## III.    Description of the Early CRC Devices

From January to May of 1991, Cummins developed and provided to various customers CRC devices (the "early CRC devices").  While the processing speeds of the early CRC devices are

---

Contentions. Because the Court finds that its analysis regarding the disputed claims applies equally to the newly asserted claims of July 18, 2005, the Court will consider them in this present motion.

The Court does note that Cummins appears to have filed new Infringement Contentions after Final Contentions were served without leave of Court. Because Glory does not appear to object to these new contentions, the Court will allow them in this case. However, the parties are reminded that this Court requires leave of Court to amend infringement and invalidity contentions. Further, the Court's prefers that parties file notices with the Court when contentions are served on the opposing party.

disputed, it is not disputed that these early CRC devices could operate in more than one mode. Of particular importance to the present motion are the "stranger" and "read" modes.

In "stranger" mode, the CRC device determines and counts the number of bills of a single, pre-set denomination. Bills of different denominations are flagged in some manner, but the device does not determine the value associated with the flagged bills. In "read" mode, the CRC device attempts to determine the denomination of every bill in a given stack. The distinction between "stranger" mode and "read" mode is critical in this case as it relates directly to claim limitations and whether the early CRC devices embodied the claimed invention.

It is Glory's position that these Cummins' early CRC devices incorporate *all* the elements of the asserted claims. Cummins asserts that the early CRC devices were not reduced to practice because *all* of the asserted claims require that the devices determine various denominations (i.e. read mode) of bills at speeds at or above 800 bills per minute. Neither party is correct.

**IV.    The "Read Claims" Were Not Reduced to Practice Before the Critical Date.**

Claim construction necessarily affects whether an invention has been reduced to practice such that in can be in public use. Based on the claim construction order entered in this case and a plain reading of the '067 claims, this Court finds that there is a fact dispute as to whether claim 37-40, 42, 44-47, 55-59, 61, 63-66 and 74-75 (the "Read Claims") were reduced to practice prior to the May 19, 1991 critical date.

Cummins asserts that *all* of the asserted claims in this case require that the devices determine various denominations of bills. The Court disagrees. However, Cummins' assertions are correct as to the Read Claims. The Read Claims all require that the device determine *different* denominations of bills at speeds about 800 bills per minute or higher.

Glory asserts that the early CRC devices were capable of operating at speeds of 800 bills per

minute and cites to Cummins' Responses to Interrogatory Nos. 42 and 43, deposition testimony of Brad Graves, and various marketing documents produced by Cummins, including CG20033 and CG20039, to support its position. Not only does the Court not find that these documents provide clear and convincing evidence that the asserted claim limitations existed in the devices, the Interrogatory Responses actually evidence a factual dispute prohibiting summary judgment.[2]

In Interrogatory Nos. 42 and 43, Glory requested that Cummins identify which claim elements were, and were not, present in the early CRC devices. Cummins responded by stating that "the feature of a speed of at least 800 or 1000 bills per minute was not present." Further, Bradford T. Graves, an inventor, states in his December 5, 2002 Declaration that the denominating machines operated in mixed (read) mode at a speed of 700 bills per minute and that the machines did not operate at a higher speed until August of 1991 after Mr. Graves made software changes to the devices.

This Court is persuaded that this evidence is sufficient to deny a request for summary judgment as to the Read Claims. A jury could find that making software changes to the devices proves that the devices were not capable of operating at the higher speeds required by the claim language. Of course, a jury could also find just the opposite. Whether the devices were capable before May 19, 1991 of running in the "read" mode at speeds at or above 800 bills per minute is therefore an issue appropriate for the fact finder – not this Court. Accordingly, as to claims 37-40, 42, 44-47, 55-59, 61, 63-66 and 74-75 of the '067 patent, the Court denies Glory's Motion for

---

[2] Glory does provide clear and convincing evidence that the early CRC devices were capable of running at speeds of 800 bills per minute when run in the "stranger" mode. However, there is a fact dispute as to the capability of the devices to run at speeds of 800 bills per minute for the "read" mode. As the "Read" mode is the mode that actually determines different denominations of the bills, it is the mode relevant to a determination of whether the claim limitations for the Read Claims were reduced to practice before the critical date.

Summary Judgment.

### V. The Early CRC Devices Meet the Claim Limitations of the "Non-Read Claims"

Determining whether summary judgment is appropriate for claims 7-8, 10-11, 23-24, and 35-36 (the "Non-Read Claims") requires further analysis. The Non-Read claims are not limited to "read" mode. These claims include a form of claim limitation that allows for flagging a document when the type or denomination of the document "can not be determined" for method claims and "is not determined" for apparatus claims. Thus, the claim language itself clearly contemplates the device *not* determining the value associated with a bill. There simply is no limitation in these claims that requires that differing determinations actually be determined. In fact, under the Court's claim construction, the device must only "come to a decision concerning the value of a bill." That decision could be that the device is not able to determine the value of the bill. Thus, the Court believes that operation in the "stranger" mode would read on the claim limitations of the Non-Read Claims.[3]

The Court believes there is clear and convincing evidence to support Defendants' claim that the early CRC devices would read onto the Non-Read claims. Thus, the Court must determine whether the "use" of the early CRC devices in January to May of 1991 was public, and if so, was Cummins' use experimental in nature.

### VI. Cummins' Use of the Early CRC Devices was Public

Before the Court needs to consider whether Cummins has an experimental use defense, it must determine whether the use of the early CRC devices was public. Public use includes "any use of claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425

---

[3] Based on the Court's analysis and the briefing submitted by the parties, the other claim limitations of the Non-Read claims appear to be met by the early CRC devices.

(Fed. Cir. 1996). Thus, the rule is simple. If an inventor wishes to keep his invention out of the public domain, the inventor needs to impose some measure of secrecy, usually in the form of a confidentiality agreement. *See Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1322-23 (Fed. Cir. 2002). Here, there is sufficient evidence for the Court to find that Cummins' use of the early CRC devices was public.

Numerous employees of Cummins' customers provided testimony evidencing that they were not aware of any confidentiality restrictions. Of even more importance, one of Cummins' engineers that worked on the development of the early CRC devices testified that Cummins attempted to secure confidentiality agreements with its customers, but that the customers refused to sign them. Thus, Cummins made the voluntary choice to provide the early CRC devices to its customers knowing full well that these were under no formal obligation to keep the devices "secret."

The evidence Cummins offers to rebut this evidence is the testimony of Per Torling and a paragraph from single document. In light of Cummins' testimony that its customers refused to enter into a confidentiality agreement, the limited evidence offered by Cummins is simply insufficient. The Court is persuaded that there is sufficient evidence to support Glory's claim that Cummins' customers were not under an obligation of confidentiality or secrecy. Thus, the early CRC devices were in public use prior to the critical date.

## VII. There is a Fact Dispute Regarding Control and Customer Awareness

When a patent challenger has made a clear and convincing case that the invention was in public use, the burden shifts to the patent holder to come forward with sufficient evidence raising a genuine issue of material fact to the contrary. *See, e.g., Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996). In this case, Cummins must provide sufficient evidence that would raise a genuine issue of material fact as to whether or not Cummins' use of the early CRC

devices was experimental.

The Court finds that the recent Federal Circuit case *Electromotive Division of General Motors Corp. v. Transportation Systems Division of General Electric Co.* is highly instructive. In that case, the Federal Circuit clarified the analysis related to "experimental use. First, experimentation sufficient to negate a pre-critical date public use must either be for the purpose of perfecting claimed features, or, in a few instances, to perfect features inherent to the claimed invention. *Electromotive Division of General Motors Corp. v. Transportation Systems Division of General Electric Co.*, 2005 WL 1774430, *8 (Fed. Cir. July 28, 2005). If the experimentation is for one of the purposes stated above, the patent holder must evidence facts sufficient to show both "control" and "customer awareness." *Id*. at *10.[4]

    1.    <u>The Experimentation Performed By Cummins was Related to Perfecting Claimed Features and Features Inherent to the Claimed Invention</u>.

Glory asserts that there is no genuine issue of material fact that the devices were reduced to practice and were perfected as to the claim limitations prior to the critical date. The Court disagrees. Cummins has offered testimony and numerous documents that raise factual issues as to the effectiveness of various claim elements, including the "transport mechanism," the "signal processing means," the "discriminating unit," and the "means for sampling." The evidence offered by Cummins raises a genuine issue of material fact as to whether Cummins was still perfecting claimed features and features related to the durability and consistency of the devices from January to May of 1991.

---

[4] There is substantial evidence indicating that Cummins subjectively believed it was testing its product. Subjective belief, however, is not the test to establish experimental use. *Id*. at *8. The Court must look to the evidence and objectively determine whether there is a genuine issue of material fact as to whether Cummins retained control of the early CRC devices and whether Cummins' customers were aware that the devices were part of a test and not a commercial sale.

2.       Cummins Exercised Control of the Early CRC Devices.

The Court turns to the facts of *Electromotive Division of General Motors Corp. v. Transportation Systems Division of General Electric Co.* to assess whether Cummins has offered sufficient evidence creating a fact issue as to control. On this issue, the Federal Circuit found that there was no evidence that EMD controlled the testing program for its new product. *Electromotive Division of General Motors Corp.*, at \*10. In particular, EMD did not provide any protocols to its customer regarding how to use the devices. *Id*. EMD likewise never supervised nor restricted use of the new products in any way. *Id*. Further, EMD made no attempt to monitor the conditions under which EMD's customers used the devices. *Id*. at \*11. EMD also did not request or receive any comments or data from its customers regarding the operation or durability of the products. *Id*.

Turning to the facts of this case, Glory has offered numerous arguments for how Cummins did not retain control. First, Glory admits that Cummins used feedback forms, but asserts that the forms were solely related to marketing features and not claimed features. The Court disagrees. The feedback forms includes requests for information related to how long the machine ran, the volume of bills, the percentages of denominations ran through the device, the accuracy of the counts, the number of errors, the accuracy of "suspect document" detection, etc. These requests either relate directly to claimed features or relate to whether the devices operated effectively in their intended environment.

Glory also asserts that Cummins did not retain control of the early CRC devices because there was no structured testing program and Cummins only observed the field trials sporadically. Glory has offered evidence that customer employees were under no duty to report specific results of tests, that Cummins' employees did not monitor the early CRC devices on a regular basis, and did not control where, or by whom, the devices were tested.

In rebuttal, Cummins has presented sufficient evidence establishing a genuine issue of material fact regarding whether Cummins retained control of the early CRC devices. Cummins has presented evidence regarding (1) feedback from customers, (2) discussions with customer employees as to how to use the devices and how to fix problems, (3) removing and repairing dysfunctional or inoperative devices and (4) maintaining records of the progress of the testing. Thus, the Court finds that there is a genuine issue of material fact as to whether Cummins retained control.

       3.      <u>Cummins' Customers Were Aware that the Devices Were Being Used for Testing.</u>

Federal Circuit law requires not only that Cummins present facts sufficient to evidence a dispute as to control, but Cummins must also present enough facts evidencing "customer awareness." As to this issue, the Federal Circuit in EMD found the record insufficient to establish the customers' awareness of the testing. *Electromotive Division of General Motors Corp*., at *11. The only evidence that customers were aware of the testing was an internal memo and limited deposition testimony. *Id*. This limited evidence did not establish awareness on the part of the customer that the new products were provided as part of a test and not as a commercial sale. *Id*. Further, the Court noted that there was no testimony from any representative of the customer describing the company's awareness of the testing, or any other form of corroborating testimony regarding the testing. *Id*. In short, the lack of such evidence "validates the lack of customer awareness." *Id*.

There is sufficient evidence before the Court to evidence a factual dispute on this issue. Cummins provided evidence beyond deposition testimony that provides support for its contention that its customers were aware that the early CRC devices were test devices. For example, not only did Cummins request feedback from customers, the title of the feedback questionnaire was "CRC – Currency Scanner Field Test Questionnaire Customer Interview." A jury could find that the title of this document would indicate that Cummins specifically communicated to its customers and those

customers were therefore aware the devices were being tested. Further, Cummins has also produced a document entitled "Letter of Request, Explanation of CRC Beta Test Procedures" that also supports Cummins' claim of customer awareness. These documents and the testimony offered by Cummins establish a genuine issue of material fact regarding customer awareness.

**VIII.   Conclusion**

Glory has not offered clear and convincing evidence that claims 37-40, 42, 44-47, 55-59, 61, 63-66 and 74-75 of the '067 patent read onto the early CRC devices. Further, as to claims 7-8, 10-11, 23-24, and 35-36 of the '067 patent, there are genuine issues of material fact regarding whether Cummins retained control of the early CRC devices when they were tested and whether its customers were aware that the devices were part of a test and not a commercial transaction. Accordingly, Glory's Motion for Summary Judgment is denied.

SIGNED this 22nd day of August, 2005.

*T. John Ward*
_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE